*GJ*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JAN SWIATLOWSKI | ) | |
| | ) | |
| Plaintiff, | ) | No. 03 C 0691 |
| | ) | |
| vs. | ) | |
| | ) | Magistrate Judge |
| WERNER CO. | ) | Arlander Keys |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Currently before the Court is Defendant Werner Company's ("Werner") Motion to Bar the Testimony of Plaintiff's Expert, Douglas R. Morita. Defendant argues that, under *Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Mr. Morita's testimony is unreliable, and speculative. For the reasons set forth below, the Court grants Defendant's Motion.

## BACKGROUND FACTS

Plaintiff purchased a ladder manufactured by Defendant Werner on November 1, 1998. He used the ladder on approximately eight different occasions, before he fell from it on March 16, 2001. Plaintiff was injured as a result of the fall, and claims that Defendant's shoddy workmanship was at fault.

The ladder involved in the accident was a 16 foot extension ladder. The ladder consists of two sections: the "base" section, which remains on the ground, and the variable "fly" section, which extends the ladder up to a height of approximately

eight feet. When the ladder's fly section is extended upward, guide brackets affixed to the left and right sides of the base section engage and stabilize the fly section of the ladder.

At his deposition, Plaintiff explained that he was using the ladder to inspect a gutter along the roof line of his house. He positioned the ladder and extended the fly section, so that it protruded about two feet above the roof line. Plaintiff testified that "something happened" while he was climbing the ladder, causing him to fall. Plaintiff does not know precisely what caused the fall, but stated that it felt as if the ladder "fell apart under me." Plaintiff does not know what step of the ladder he was standing on when the accident occurred.

Plaintiff seeks to rely upon the expert testimony of Mr. Douglas R. Morita, a mechanical engineer, in establishing liability. Mr. Morita is a mechanical engineer[1] and serves as Vice President of Polytechnic, Inc., an engineering consulting firm that he has worked for since 1977. Mr. Morita claims that he has testified on behalf of parties suing ladder manufacturers on twenty to forty occasions. Mr. Morita has never designed or sold ladders, nor has he ever conducted a complete set of tests promulgated by the American National Standards Institute or Underwriters Laboratory.

---

[1] Defendant notes Mr. Morita is not a licensed Professional Engineer in the State of Illinois.

In preparing his opinion, Mr. Morita inspected the ladder and the accident site, interviewed Plaintiff's daughter about the accident, and reviewed Werner's manufacturing specifications for the ladder in question. Mr. Morita noted that the side rails of the base section of the ladder were 3/32" too wide at the guide bracket level, and 1/32" too narrow at the top rung of the base. Mr. Morita believes that these deviations from Werner's own manufacturing specifications allowed the fly to separate from the guide brackets on the base of the ladder, causing Plaintiff to lose his balance and fall. Mr. Morita claims that the accident would not have occurred but for Werner's failure to manufacture the ladder according to specifications.

Mr. Morita concedes that he did not perform any scientific testing on Mr. Swiatlowski's ladder, nor did he attempt to simulate how the fly and base of the ladder could have separated while Plaintiff was on the ladder. Mr. Morita did not review any literature in preparing his report[2].

## DISCUSSION

Although this is a diversity case, the admissibility of evidence is governed by federal law. *In re Air Crash Disaster Near Chicago,* 701 F.2d 1189, 1193 (7th Cir. 1983). Therefore, Plaintiff bears the burden of proving that Mr. Morita's testimony

---

[2] Although Mr. Morita cited to a 1977 report from Case Western University entitled "A Report on the Dynamic of Testing Ladders," he did not review the report in preparing his opinions.

is admissible under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

Rule 702 directs courts to act as gate keepers, admitting only expert testimony that satisfies two primary criteria: 1)the testimony must be *reliable*; and 2) the testimony must assist the trier of act in understanding the evidence or in determining a fact at issue in the trial. *Cummins v. Lyle Industries*, 93 F.3d 362, 367 (7th Cir. 1996); *see also Ancho v. Pentek*, 157 F.3d 512, 515 (7th Cir. 1998) (courts must decide "whether the expert's testimony pertains to scientific knowledge" and "must rule out subjective belief or unsupported speculation.")

To assist courts in evaluating whether evidence meets the reliability prong of the test, the Supreme Court in *Daubert*[3] set forth a list of nonexhaustive factors to be considered: 1)whether the expert's opinion has been subjected to verification through testing; 2) whether it has been subjected to peer review and publication; 3) whether it has a known or potential rate of error; and 4) whether it is generally accepted in the applicable scientific community. 509 U.S. at 593-94. Courts applying *Daubert* have considered additional factors, including whether the expertise was developed for litigation, and whether the proposed expert ruled out other alternative explanations.

---

[3] The Supreme Court extended *Daubert*'s holding to technical, as well as scientific, expert testimony in *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 141 (1999).

4

The *Daubert* test is flexible, and admissible expert testimony need not satisfy each of the listed factors. *United States v. Vitek Supply Corp.*, 144 F.3d 476, 485 (7th Cir. 1998). Rather, testimony that is reliable, and well grounded in the methods and procedure of science is admissible. In addition, "[a]n expert is not required to substantiate his opinions through testing particularized to the specific case if the science he is using has already been shown experimentally to be reliable." *Manning v. Buchan*, No. 02 C 372, 2004 WL3119020, at *6-7 (N.D. Ill. December 3, 2004). "The primary purpose of the Rule 702/Daubert inquiry is to ensure 'that an expert, whether basing testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.*, at * 6 (quoting *Bryant v. City of Chicago,* 200 F.3d 1092, 1098 (7th Cir. 2000).

In his report, Mr. Morita notes the following: 1) he took measurements of the ladder and, based on his observation of the ladder, the base section was manufactured "with dimensions and a twist which increased the distance between the side rails at that guide bracket on the side which mates with the fly section"; 2) the distance between the side rails thereby increased the distance between the guide brackets, thereby permitting the fly section to disengage from the base section at the guide brackets;

5

3) the distance between the base section side rails at the guide brackets, and the twist to the side rails is inconsistent with Werner's manufacturing drawings; 4) the defect would allow the ladder fly section to become separated from the base section; and 5) had the ladder sections not become separated, the accident would not have occurred.

Defendant notes that Mr. Morita did not perform any testing to attempt to replicate Plaintiff's accident. Nor did Mr. Morita refute Defendant's videotape reenacting Plaintiff's actions on a similarly manufactured ladder, showing an individual safely using the ladder despite the manufacturing defect. Mr. Morita did not review any literature in preparing his analysis, but stated that he had previously consulted an article that outlined testing done for the Ladder Institute concerning side to side loadings[4].

Although Mr. Morita claimed that the "physical geometry of the situation" supported his conclusions, he later conceded that he did not know Plaintiff's height or weight, he did not measure the height of the house, he did not know what rung of the ladder Plaintiff was standing on when the accident occurred, he did not know what percentage of Plaintiff's body was resting on the base

---

[4] Mr. Morita supplied defense counsel with a copy of the cover page of the article, but neither the article nor the cover page was attached to or referenced in Mr. Morita's report. In addition, neither party supplied a copy of the article to the Court.

section as opposed to the fly section of the ladder, and he was unaware as to whether Plaintiff had even reached the fly section of the ladder. Mr. Morita stated that he did not think it was necessary to calculate the X and Y displacements, but was unable to identify "any scientific literature or any tests or any studies done that say that in this type of scenario, you don't have to do a calculation of the X and Y displacements to render an objective scientific opinion." Morita Dep at pp. 77-78.

Mr. Morita's inspection of the ladder and accident site, his interview with Plaintiff's daughter, and his review of Werner's manufacturing specifications, were a sufficient bases upon which to form his conclusion that Werner's ladder contained a manufacturing defect. The critical part of Mr. Morita's testimony, however, is his conclusion that Werner's manufacturing defect proximately caused Plaintiff's fall. But Mr. Morita fails to adequately detail and support how he leapt from the conclusion that the ladder was not manufactured according to Werner's specifications to his ultimate conclusion on proximate cause.

Mr. Morita's testimony is similar to expert testimony that Judge Kennelly recently analyzed in *Pierce v. Chicago Rail Link, LLC, CSX*, NO. 03 C 7524, 2005 WL 599980 (N.D. Ill. Mar. 15, 2005). The *Pierce* plaintiff had sued defendants for injuries he sustained following an accident at his railroad switching job. The defendants challenged the reliability of four of the

7

plaintiff's accident reconstruction experts. *Id. at *4.*

Judge Kennelly found that one of the plaintiff's expert witnesses, Mr. William Bogett, who has a Ph.D in engineering management and is the president of a consulting firm specializing in investigation and accident reconstruction, failed to provide "analytically sound bases" for his conclusions. *Id.* at *5 (quoting *DePaepe v. General Motors Corp.*,141 F.3d 715, 720 (7th Cir. 1998)). Specifically, Mr Bogett failed to explain the methodology he used in reaching his conclusions about the plaintiff's movements and the sequence of events. *Id.* (noting that, "[i]f there is a methodology, as opposed to an 'ad hoc set of unexamined assumptions,' then Bogett failed to explain it or show that his analysis is testable or generally accepted in his field.") Judge Kennelly stated that:

> 'An expert must offer good reason to think his approach produces an accurate estimate using professional methods, and this estimate must be testable. Someone else using the same data and methods must be able to replicate the result.'

*Id.* quoting *Zenith Electronics Corp. v. WH-TV Broadcasting Corp.*, 395 F.3d 416, 419 (7th Cir. 2005).

Similarly, Mr. Morita has failed to satisfy this Court that he relied upon a methodology that is analytically sound, testable, or generally acceptable in his field. Instead, Mr. Morita made a number of assumptions concerning Plaintiff's height, weight, and positioning, and speculated as to the subsequent events. Mr. Morita reached his conclusions without

8

calculating X and Y displacements, and could not identify any literature, data, or studies supporting his claim that the calculations were unnecessary. Mr. Morita conceded that he could have attempted to replicate the events leading up to the accident, but explained that the odds of ever reproducing the exact sequence of events were slim. If another expert cannot test Mr. Morita's theory and replicate the outcome; and if Mr. Morita cannot identify any literature or studies supporting his conclusions or methodology, the Court is left to conclude that Mr. Morita's analysis is merely speculative, and not sufficiently reliable under rule 702. As the Seventh Circuit has explained:

> The expert must be able to compare the data at hand with a known scientific conclusion or relationship. If experts cannot tie their assessment of data to known scientific conclusions, based on research or studies, then there is no comparison for the jury to evaluate and the expert's testimony is not helpful to the jury.

*Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 614 (7th Cir. 1993).

What was not seriously at issue in *Pierce*, but is worth discussing in this case, are the expert witness's credentials. While Mr. Morita is clearly a seasoned and experienced mechanical engineer, it is unclear what expertise he has with regard to ladders or accident reconstruction. At his deposition, Mr. Morita claims that he had been retained or consulted in 20 to 40 cases involving ladders. Mr. Morita's expert report, however,

does not list a single case in which he was an expert witness[5]. Nor do Mr. Morita's numerous publications and seminars indicate an expertise in this area. Mr. Morita has not persuaded the Court that his qualifications render him an expert in this area.

## CONCLUSION

For the reasons set for above, Defendant's Motion to Bar the testimony of Plaintiff's Expert, Mr. Douglas R. Morita, is Granted.

DATE: March 24, 2005      E N T E R E D:

*Arlander Keys*
Arlander Keys
United States Magistrate Judge

---

[5] The Court acknowledges that Rule 26(a)(2) only requires experts to list the cases in which they've testified at trial or in deposition in the past four years. Perhaps Mr. Morita's experience was accumulated prior to 2001.

10