# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAN SWIATLOWSKI, | ) |
| Plaintiff, | ) No. 03 C 0691 |
| v. | ) Magistrate Judge Maria Valdez |
| WERNER CO., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jan Swiatlowski, through a two-count complaint, sues the Werner Company ("Werner") under Illinois common law, raising a strict liability and a negligence claim. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[1] On July 14, 2003, parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set out below, the Court grants the defendant's Motion for Summary Judgment [43].

### I. *Court's Standing Order & Local Rules on Summary Judgment Motions*

At the outset, prior to analyzing each side's facts and arguments or lack thereof, the Court finds it necessary to note the parties' noncompliance with both this Court's standing order on summary judgment ("standing order") and the District Court's Local Rule 56.1, each outlining the proper procedure for motions under Federal Rule of Civil Procedure ("Rule") 56. The

---

[1] The Court notes that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interests and costs. At the commencement of this action, Werner was a Delaware corporation with its principal place of business in Pennsylvania and Swiatlowski was a citizen of Illinois.

1

standing order's express language makes clear that this Court expects *strict* compliance with Local Rule 56.1. Moreover, the Seventh Circuit has "repeatedly held that a district court is entitled to expect *strict* compliance with [Local] Rule 56.1." *Ammons v. Aramark Unif. Servs. Inc.*, 368 F.3d 809, 817 (7th Cir. 2004) (emphasis added) (citations omitted).

As "[s]ubstantial compliance is not strict compliance," *Ammons*, 368 F.3d at 817, it follows that the parties (due to their noncompliance) fall short of the expected mark. Defendant struggles with the requirement of offering specific support for its factual propositions, while Plaintiff opts not to respond or carry forth any statement of his own additional facts.[2]

Under Local Rule 56.1, a movant must file "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law. . . . The statement . . . *shall* consist of short numbered paragraphs, including within each paragraph *specific references* to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." L.R. 56.1(a)(3) (emphasis added). As to a non-movant's response and statement of additional facts, courts in this district have similarly construed Local Rule 56.1(b)(3) to set out requirements for a non-movant that are identical to the obligations imposed on a movant's statement of facts. *Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). As such, Local Rule 56.1(b)(3):

> may be the most important litigation rule outside statutes of limitation because the consequences of failing to satisfy its requirements are so dire. Essentially, the penalty for failing to properly respond to a movant's Local Rule 56.1(a) statement is usually summary judgment for the movant . . . because the movant's factual

---

[2] Plaintiff's response and additional statement of facts were due on June 7, 2005, which came and went without Plaintiff filing either and without a request for an enlargement of time. On September 13, 2005, Plaintiff represented to the Court that it was "the knowing choice of counsel for Plaintiff not to file a response to Defendant's Motion for Summary Judgment." (Pl.'s Mot. Continue ¶ 7.)

2

allegations are deemed admitted.

*Malec*, 191 F.R.D. at 584. Because Swiatlowski opted not to comply with Local Rule 56.1(b)(3), the facts presented by Werner are deemed admitted. As such, the majority of the defendant's other shortcomings are "cured" by the plaintiff's lack of response.

## II. *Summary Judgment Standard*

Familiar Rule 56 principles impose on movant Werner the burden of establishing the lack of a genuine issue of material fact necessitating trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). At this stage, courts do not weigh evidence, make credibility calls, or determine the truth of matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986). Instead, courts must consider the evidentiary record in the light most favorable to the non-moving party and draw all reasonable inferences in the non-movant's favor. *Ezel v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted).

To avoid summary judgment, non-movant Swiatlowski "must produce more than a scintilla of evidence to support [the] position" that a genuine issue of material fact exists. *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (citation omitted). If a non-moving party fails to make a sufficient showing on an essential element of her case, the moving party is entitled to judgment as a matter of law. *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 709 (7th Cir. 2002) (citing *Celotex Corp.*, 477 U.S. at 323).

## III. *Facts*[3]

On November 1, 1998, Swiatlowski purchased an aluminum ladder manufactured by Werner. (Def.'s LR 56.1(a) Stmt. ¶¶ 6, 22.) He used the ladder on approximately eight or nine occasions without incident. (*Id.* at ¶ 7.) On March 16, 2001, however, Swiatlowski fell from the ladder while using it to inspect gutters that ran parallel to the roof line of his home. (*Id.* at ¶ 7-9.) Swiatlowski was injured as a result of the fall. (*Id.* at ¶ 17.)

The ladder in question was a 16 foot extension ladder. (*Id.* at ¶ 5.) An extension ladder consists of two sections: (1) the "base" section, which remains on the ground; and (2) the variable "fly" section at the top of the ladder, which lengthens the ladder. (*Id.*) The two sections are affixed together with guide brackets at the top of the base and a mechanism that locks the bottom step of the fly to one of the steps of the base. (*Id.*)

Swiatlowski positioned the ladder and extended the fly section so that it protruded about two feet above the roof line. (*Id.* at ¶ 10.) Before climbing up the ladder, Swiatlowski ensured the fly was properly engaged with the guide brackets at the top of the ladder's base. (*Id.* at ¶ 11.) While Swiatlowski climbed the ladder, something happened causing him to fall. (*Id.* at ¶¶ 12, 14.) Swiatlowski does not recall how high he had climbed before the fall. (*Id.* at ¶ 13.) The ladder, however, did break his fall. (*Id.* at ¶ 17.)

Swiatlowski theorizes that the fly separated from the base. (*Id.* at ¶ 15.) However, Swiatlowski did not see the two sections separate before or during his fall. (*Id.* at ¶ 16.) The base and fly, however, were separated into two pieces after the fall. (*Id.* at ¶ 18.)

---

[3] Unless otherwise noted, the following facts are undisputed and/or deemed admitted pursuant to Local Rule 56.1.

4

The defendant submitted an affidavit from its expert witness, Frederick J. Bartnicki, P.E., a Senior Engineer for Werner. (*Id.* at ¶ 19.)[4] Bartnicki says he inspected the Swiatlowski ladder and accident site on January 4, 2005. (*Id.* at ¶ 20.) And, Bartnicki says within a reasonable degree of engineering certainty and probability it is his opinion that there were no design or manufacturing defects in Swiatlowski's ladder and that the ladder was not unreasonably dangerous when it left Werner's control. (*Id.* at ¶¶ 21, 22.)

According to Bartnicki, Werner designed and manufactured the ladder in question in accordance with the applicable safety standards of the American National Standards Institute ("ANSI") A14.2-1990, the Aluminum Association, the American Society for Testing Materials ("ASMT"), and the internal standards of Werner. (*Id.*) Moreover, in Bartnicki's opinion, the excessive width between the guide brackets on the base of the ladder was the result of trauma to the ladder that occurred after it left Werner's control. (*Id.* at ¶ 23.) During his inspection, he disengaged the two sections of the ladder and stood on it without incident. (*Id.*) Even when the fly section of the Swiatlowski ladder was fully disengaged from the guide brackets on the base, the two sections of the ladder did not separate, "scissor", or collapse. (*Id.* at ¶ 24.)

## IV. *Analysis*

A district court sitting in diversity applies federal procedural rules and state substantive laws. 28 U.S.C. § 1652; *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Radovanovic v. Wal-Mart Stores East, Inc.*, No. 04 C 0014, 2006 WL 305890, at *3 (N.D. Ill. Feb. 2, 2006). To

---

[4] For the limited purpose of ruling on Defendant's Motion for Summary Judgment, the Court finds the defendant has met its burden of proving Frederick J. Bartnicki's testimony is admissible under Federal Rule of Evidence 702, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). Equally important, the plaintiff has opted not to challenge the defense expert's conclusions and methodology.

5

that end, a federal court siting in diversity must apply the choice of law principles of the forum state to determine which state's substantive law governs. *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (citation omitted).

In this matter, the Court looks to Illinois' choice of law rules. For tort actions, Illinois instructs the Court to ascertain the forum with the "most significant relationship" to the case. *Id.* Under Illinois' "most significant relationship" approach,[5] the law of the place of injury controls unless Illinois has a more significant relationship with the event or parties. *Id.* (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)). Here, as the situs of Swiatlowski's fall was Illinois, the law of Illinois will apply.

### A. *Negligence Claim*

Under Illinois law, a cause of action for negligence – such as negligent manufacture based on defective design – is had where a plaintiff establishes that: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; and (3) the breach was the proximate cause of the plaintiff's injuries. *Chandler v. Ill. Cent. R.R. Co.*, 798 N.E.2d 724, 728 (Ill. 2003) (citations omitted). The burden of proof under a negligence claim rests with the plaintiff. *Blue v. Envtl. Eng'g, Inc.*, 828 N.E.2d 1128, 1142 (Ill. 2005) (citation omitted). Negligence does not permit liability without fault. *Baltus v. Weaver Div. of Kidde Co.*, 557 N.E.2d 580, 586 (Ill. 1990).

"Illinois cases considering a cause of action for defective products liability sounding in negligence rather than strict liability are rare, probably because it appears to plaintiffs that it is

---

[5] Four factors are to guide a court under a "most significant relationship" approach: "(1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered." *Tanner v. Jupiter Realty Corp.*, 433 F.3d 913, 915 (7th Cir. 2006) (citing *Esser v. McIntyre*, 661 N.E.2d 1138, 1141 (Ill. 1996)).

easier to prove the strict liability count." *Blue,* 828 N.E.2d at 1141. Nevertheless, the Illinois Supreme Court has ruled that to establish negligent design of a product, a plaintiff must prove either: "(1) the defendant deviated from the standard of care that other manufacturers in the industry followed at the time the product was designed, or (2) that the defendant knew or should have known, in the exercise of ordinary care, that the product was unreasonably dangerous and defendant failed to warn its dangerous propensity." *Id.* (upholding the *Carrizales v. Rheem Mfg. Co.,* 589 N.E.2d 569 (Ill. 1991), and *Baltus,* 557 N.E.2d 580, approaches to negligent design claims). And, the Seventh Circuit has construed Illinois law on negligent design to require a plaintiff to establish: (1) "the existence of a defective condition in the product at the time it left the manufacturer's control," *Fuesting v. Zimmer, Inc.,* 421 F.3d 528, 532 (7th Cir. 2005) (quoting *Carrizales,* 589 N.E.2d at 580), and (2) "a causal link between the alleged design defect . . . and [the plaintiff's] injury," *Fuesting,* 421 F.3d at 532 (quoting *Baltus,* 557 N.E.2d at 586). Furthermore, if a plaintiff contends a design was unreasonably dangerous, she also carries the burden of coming forward with evidence of "an alternative design which is economical, practical[,] and effective." *Baltus,* 557 N.E.2d at 586.

Not all the elements of negligence, however, are questions for the fact finder. Specifically, the existence of a duty is a question of law for a court to decide. *Chandler,* 798 N.E.2d at 728 (citations omitted). And, "Illinois imposes a duty on a manufacturer to make a product that is reasonably safe." *Masters v. Hesston Corp.,* 291 F.3d 985, 990 (7th Cir. 2002) (citing *Baltus,* 557 N.E.2d at 585). Thus, as a matter of law, Swiatlowski easily clears the hurdle of duty.

However, under Illinois law, breach of duty and proximate causation are questions of fact

7

for a fact finder to reach. *Chandler,* 798 N.E.2d at 728 (citing *Thompson v. County of Cook,* 609 N.E.2d 290, 293 (Ill. 1992)). Here, Swiatlowski did not come forward with any evidence on either the second or third element of his negligence claim. Swiatlowski's inaction has rendered it impossible for a reasonable fact finder to find the elements of breach and causation are met. Thus, Swiatlowski's lack of opposition to Bartnicki's expert opinion is fatal to his claim of negligence.

The only available evidence on breach and causation is Bartnicki's opinion testimony that: (1) there were no design and manufacturing defects in the ladder, (2) Werner designed the ladder in compliance with numerous applicable safety standards, and (3) the damage to the ladder's brackets was the likely result of the accident and not its cause. Essentially, Bartnicki's testimony is that there was neither a breach nor proximate causation to be had.

Moreover, Swiatlowski's own deposition testimony concedes that there was no visible damage or defect to the ladder prior to or during his fall. Only after the fall, was damage evident. "It is well-settled that speculation may not be used to manufacture a genuine issue of fact." *Amadio v. Ford Motor Co.,* 238 F.3d 919, 927 (7th Cir. 2001) (citing *Gorbitz v. Corvilla, Inc.,* 196 F.3d 879, 882 (7th Cir.1999); *Patterson v. Chi. Assoc. for Retarded Citizens,* 150 F.3d 719, 724 (7th Cir.1998)). And, "[n]o inference of defectiveness arises from the mere fact that an injury occurred." *Baltus,* 557 N.E.2d at 585 (quoting *Phillips v. United States Waco Corp.,* 516 N.E.2d 670, 674 (Ill. 1987)).

Finally, because Swiatlowski claims that the ladder was designed in an unreasonably safe manner, in order to survive summary judgment, he must present evidence of an alternative design which is economical, practical, and effective. *Muller v. Synthes Corp.,* No. 99 C 1492, 2002 U.S.

Dist. LEXIS 5919, at *26 (N.D. Ill. Mar. 25, 2002) (citing *Baltus*, 557 N.E.2d at 585). However, on March 24, 2005, Judge Keys disallowed the testimony of Swiatlowski's expert on negligent design because it was unreliable and speculative [39]. Here, Swiatlowski failed to carry his Local Rule 56.1(b)(3) burdens to challenge Werner's evidence and raise additional facts to establish the feasibility of an alternative, non-negligent design. "Where the testimony of plaintiff's designated expert is excluded, plaintiff cannot raise a question of fact to avoid summary judgment . . . as to matters for which plaintiff's only evidence is excluded testimony." *Muller*, 2002 U.S. Dist. LEXIS 5919, at *29 (citing *Kirsten v. W.M. Barr & Co.*, 983 F. Supp. 753, 761 (N.D. Ill. 1997)).

Swiatlowski's failure to comply with Local Rule 56.1(b)(3) amounts to both an admission of the facts as construed by his opponent and a concession of key points in favor of granting summary judgment. As such, no reasonable fact finder could side with the plaintiff on such a thin reed of evidence. There is not even a scintilla of evidence for this Court to construe in a light favorable to Swiatlowski.

The burden of proof in a negligence case remains with the plaintiff. *Blue*, 828 N.E.2d at 1142 (citations omitted). As such, the Court concludes that Swiatlowski fails to raise from the available record an issue of disputed fact as to breach and causation. As a matter of law, the Court deems summary judgment on the negligence count in favor of the defendant is warranted.

### B. *Strict Liability*

"In a negligent defective design case, the focus is on the conduct of the defendant, but in a strict liability defective design case, the focus is on the product." *Blue*, 828 N.E.2d at 1141

(citations omitted). Under Illinois law, a cause of action for strict liability is had where a plaintiff establishes that: (1) injury or damage resulted from a condition of a product; (2) the condition was unreasonably dangerous; and (3) the condition existed at the time the product left the manufacturer's control. *Vlahovich v. Betts Mach. Co.*, 260 N.E.2d 230, 232 (Ill. 1970); *see also Staecker v. Hitachi Seiki U.S.A., Inc.*, No. 95 C 0743, 1998 U.S. Dist. LEXIS 984, at *3 (N.D. Ill. Jan. 21, 1998) (citing *Faucett v. Ingersoll-Rand Min. & Mach. Co.*, 960 F.2d 653 (7th Cir. 1992)). "A product may be unreasonably dangerous due to a manufacturing defect, a failure to warn, or defect in design." *Staecker*, 1998 U.S. Dist. LEXIS 984, at *3-*4 (N.D. Ill. Jan. 21, 1998) (citing *Lamkin v. Towner*, 563 N.E.2d 449, 457 (Ill. 1990); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 99 at 695 (5th ed. 1984)).

Swiatlowski claims that the ladder was unreasonably dangerous due to a manufacturing defect and a defect in design. He alleges that the ladder left Werner's control in an unreasonably safe condition, which allowed for the fly to separate from the base causing his fall and injuries.

In the strict liability setting, if the plaintiff introduces evidence that a reasonable alternative design could have been adopted, a trier of fact may conclude that the product was defective notwithstanding that the alternative design was not adopted or considered at the time of sale. *Blue*, 828 N.E.2d at 1142 (citing Restatement (Third) of Torts: Products Liability § 2, Comment d, at 19 (1998)). The plaintiff can also prove strict liability by presenting proof that the defendant deviated from the industry manufacturing standard. *Blue*, 828 N.E.2d at 1142 (citing *Anderson v. Hyster Co.*, 385 N.E.2d 690 (Ill. 1979)). In this case, Swiatlowski has pressed neither the "alternative design" option on proof or attempted to wander down the "deviation from industry standard" path.

10

"[I]n Illinois it is not necessary for [a] plaintiff to plead and prove [her] due care or freedom from contributory negligence." *Vlahovich*, 260 N.E.2d at 232. Thus, Swiatlowski's failure to highlight evidence of his due care in use of the ladder is irrelevant to whether he carried his burden to survive summary judgment. In Illinois, moreover, assumption of the risk is a valid affirmative defense to strict liability regardless of the absence of any contractual relationship between the parties. *Id.* The Court need not address any such affirmative defense as Swiatlowski fails to carry his case in chief.

Swiatlowski's admissions and concessions, discussed above, are similarly costly in the strict liability arena. Werner's expert, Bartnicki, testified that the ladder was designed and manufactured in accordance to at least three industry standards and the excessive width, twisting, and deformation of the top of the ladder's base section and the bracket were the result of damage to the ladder (not the proximate cause of Swiatlowski's injury). Bartnicki also concluded that when the fly section of the ladder is disengaged from the guide brackets during use, the ladder does not collapse. Simply put, Swiatlowski's failed to contested these material facts.

His failure to comply with Local Rule 56.1(b)(3) equals Swiatlowski's admission of crucial facts. Further, his failure to bring forth additional record evidence to raise even the slightest dispute as to material facts is fatal to his strict liability claim. As a matter of law, the Court deems summary judgment on the strict liability count is warranted as well.

### V. *Conclusion*

Defendant's Motion for Summary Judgment [43] is GRANTED and Counts I (negligence) & II (strict liability) of the Complaint are DISMISSED with prejudice. The Court

11

DIRECTS the Clerk of the Court to enter judgment accordingly.

**So ordered.**

_____
Hon. Maria Valdez

**MAR 0 7 2006**
_____
Date